FILED

2012 Apr-06  PM 12:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

ABRAHAM SANCHEZ,

     Plaintiff,

v.

                                   CASE NO. 3:10-cv-0614-PWG

LAS FIESTAS, INC.,

     Defendant.

## REPORT AND RECOMMENDATION

Before the court is plaintiff's motion and brief for partial summary judgment (docs. 18, 19), defendant's response (docs. 23, 24), and plaintiff's reply (doc. 25). The matter is before the undersigned magistrate judge pursuant to the provisions of 28 U.S.C. § 636(b); the General Orders of Reference dated July 25, 1996 and May 8, 1998, as amended July 27, 2000; and Rule 72 of the *Federal Rules of Civil Procedure*. For the reasons that follow, the undersigned recommends that plaintiff's motion for partial summary judgment be denied.

## Factual Background[1]

Defendant Las Fiestas, Inc. ("Las Fiestas") owns and operates several Mexican restaurants in northwest Alabama. In 2004, plaintiff Abraham Sanchez ("Abraham") began working for Las Fiestas as a waiter at the Cloverdale location. Abraham Depo. (Doc. 23 Att. 2) 7. In 2006, Las Fiestas opened a restaurant in Regency Square Mall in Florence, Alabama. The

---

[1]At summary judgment, the court views the facts in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The court therefore does so here, drawing those facts from the pleadings, depositions, and other evidentiary materials on file. Nevertheless, what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts nor all of the facts. *See Crawford v. Carroll*, 529 F.3d 961, 964 n.1 (11th Cir. 2008).

restaurant was located in the mall's food court, and provided counter service only. The restaurant

operated a total of seventy hours per week; it was open Monday through Saturday from 10:00 am

to 9:00 pm, and on Sundays from 1:00 pm to 5:00 pm.

Plaintiff began working at the mall restaurant as a manager in October 2006. Abraham

Depo. (Doc. 19 Att. 1) 8. He and all other managers reported directly to defendant Carlos

Sanchez ("Carlos"), the sole owner of Las Fiestas. Carlos Depo. 6. Plaintiff's job duties

reportedly included customer relations, supervising the other employees, ensuring that the

restaurant employees followed company procedures, and consistently serving quality food to the

public. Carlos Aff. (Doc. 23 Att. 1);[2] Abraham Depo. 30, 33. He ordered the food and other

supplies for the restaurant and handled maintenance issues. Carlos Depo. 23–24; Abraham Depo.

16–17, 27. Plaintiff determined when employees could take breaks, determined whether

---

[2]Plaintiff argues that Carlos's affidavit is a "sham affidavit" and should be stricken from the record. Plaintiff cites to *Santhuff v. Seitz*, 385 Fed. Appx. 939 (11th Cir. 2010). *Santhuff* strikes an affidavit that clearly conflicted with the affiant's deposition testimony, stating:

> We have explained that "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assoc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir.1984). In *Lane v. Celotex Corp.*, 782 F.2d 1526 (11th Cir.1986), we clarified that "we may *only* disregard an affidavit that 'contradicts, *without explanation*, previously given clear testimony.' " *Id.* at 1532 (quoting *Van T. Junkins*, 736 F.2d at 657)).

*Santhuff*, 385 Fed. Appx. at 944. The affidavit filed in this case is not a sham affidavit. Although Carlos's affidavit does include information not discussed in his deposition, none of his affidavit contradicts any testimony made in his deposition. Plaintiff argues that "how the plaintiff would perform duties on his days off and when he would discipline employees . . . escaped [Carlos's] memory during his deposition," but Carlos was not even asked about these matters in his deposition. Because Carlos's affidavit does not conflict with his deposition testimony, it is not considered a "sham affidavit" and is appropriate evidence to be considered in opposition to plaintiff's motion for partial summary judgment.

additional employees were needed, and disciplined employees for poor work. Carlos Aff.; Abraham Depo. 29; Carlos Depo. 40–41. When employees or customers complained, the complaints were received by plaintiff. Abraham Depo. 30, 32–33.

Plaintiff shared hiring duties with Carlos. Carlos Aff.; Carlos Depo. 22–23. However, Carlos had to approve all hires at the mall location and he was responsible for setting the pay of all employees. Carlos Depo. 23. Employees were rarely fired from the Las Fiestas chain of restaurants, but plaintiff had the authority to send employees back to another restaurant if he was unhappy with their performance. *Id.* at 24 ("We send somebody from another restaurant, somebody extra. Sometimes he send them back because not working good. We never say no more job."). For example, if plaintiff needed extra help for the mall restaurant, he would call Carlos, who would send an extra employee to the mall location. *Id.* Plaintiff could then dismiss the extra employees back to the restaurant where they normally worked. Carlos visited the mall restaurant on average only twice a month. Carlos Aff.

Plaintiff typically worked from 10:00 am to 9:00 pm five days a week, with two 30-minute breaks throughout the day. Additionally, plaintiff would work four hours every Sunday. Abraham Depo. 21–22; Carlos Depo. 34–37. Plaintiff arrived at the mall about fifteen-minutes early to open the restaurant and might stay ten minutes after it closed to clean up and prepare for the next day. Carlos Depo. 36–37; Abraham Depo. 19–20. Plaintiff received a bi-weekly salary of $600 via check and between $500 to $600 in cash.[3] Doc. 19 at 2; Abraham Depo. 9–12; Carlos

---

[3]Although admitting to the above pay structure in his brief, plaintiff stated in his deposition that he "never" received paychecks as a manager but received "around $1000" cash every two weeks. Abraham Depo. 9, 10–11. For the purposes of summary judgment we assume defendants' version of the facts–that plaintiff received between $1100 and $1200 every two weeks. It is not important for purposes of this motion whether that payment was in the form of a

Depo. 12. If he missed time at the mall, his pay would be reduced accordingly. Carlos Depo. 16. On days when plaintiff was not on duty, he could leave instructions for employees to perform specific tasks, and upon his return, could ensure that the tasks were performed. Carlos Aff. He had the authority to discipline employees who did not comply with company policy during his days off. *Id.* Finally, he had to ensure that the employees had the necessary supplies to operate the restaurant when he was not working and that there were enough employees scheduled for each day. *Id.*

Plaintiff typically worked with one other employee, Carlos Depo. 21-22, although as discussed above he sometimes called Carlos for extra employees. Defendant has provided sheets on which plaintiff wrote down who worked at the mall location each week. Abraham Depo. 17–18, 31–32; *see* Doc. 24 Atts. 1, 2. The sheets were not necessarily a schedule, but were kept to help ensure that the other employees were being paid for their hours.[4] Abraham Depo. 30–32. Plaintiff states that a  man named "Jorge" worked at the mall but did not work with plaintiff. *Id.* at 17. Plaintiff also worked with two men named "Oscar"[5] and "Josef Fidel." *Id.* at 12, 17–18.

---

paycheck or was given to plaintiff in cash.

[4]There is some confusion as to whether these sheets or considered schedules or just pay sheets.  *Compare* Abraham Depo. 13 (Q: "Is that a schedule?" A: "Yes.") *with* Abraham Depo. 13 ("This is not a schedule. . . . This is to pay people."). This distinction is not important for the purposes of summary judgment.

[5]At one point in his deposition, plaintiff mentions he worked with a man named "Oscar Largo," who was "the last [employee] that worked with [plaintiff]." Abraham Depo. 12. Later he said "[Titino] is the one who was working with him, and his name is Oscar." *Id.* at 17–18. It is unclear whether there were two separate men named Oscar or whether plaintiff is referring to the same man. The name "Titino" appears frequently on the pay sheets provided, particularly at the later dates, while the name "Largo" does not appear at all. *See* Doc. 24 Atts. 1, 2. The court assumes that at least one of these men is the cook to whom plaintiff refers. *See* Abraham Depo. 20, 27.

4

Oscar typically arrived to work earlier than Abraham, since he was the cook and needed to prepare the food. *Id.* at 20, 27. When Oscar had a day off, he would prepare the food the previous day, and another employee would come in to serve the food to the customers. *Id.* at 27. Other employees from the mall location are listed on the sheets written out by plaintiff.[6] *See* Doc. 24 Atts. 1, 2. For the most part, the sheets do not list how many hours each employee worked, but rather just whether they worked on any particular day. The sheets are analyzed below.

Plaintiff stopped managing the mall restaurant in June or July 2009. Abraham Depo. 34; Carlos Depo. 25. He returned to working as a waiter at the Las Fiestas restaurant in Cloverdale and remains employed in that capacity. On March 23, 2010, plaintiff filed this lawsuit, seeking overtime pay pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*

### Standard of Review

A moving party is entitled to summary judgment if there is no genuine dispute as to any material fact, leaving final judgment to be decided as a matter of law.  *See* FED. R. CIV. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The facts, and any reasonable inference therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970).  Once met by the moving party, however, the burden shifts to the nonmovant to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).  A party opposing a

---

[6]Aside from Abraham, Titino, Fidel, and Jorge, other employees listed are Charro, Giovanni, Mongo, Limon, Andres, Adriana, Chon, Manuel, Joto, Pulques, Julio, Mateo, ARG, Brooke, Javier, Arturo, Giovanni, Pillo, Pillin, and Andres. Doc. 24 Att. 1, 2.

properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990).

## Legal Analysis

The Fair Labor Standards Act ("FLSA") requires that employers pay their employees one and one-half time overtime pay for all hours worked in excess of forty hours per week. 29 U.S.C. § 207(a). However certain employees are exempt from the requirement that they receive overtime pay. *See* 29 U.S.C. § 213(a). Defendants argue that plaintiff qualifies as an executive employee and is therefore not entitled to overtime pay. *See* 29 U.S.C. § 213(a)(1) ("The [overtime pay] provisions . . . shall not apply with respect to . . . any employee employed in a bona fide executive . . . capacity . . . ."). An executive employee is defined as any employee:

> (1) Compensated on a salary basis of not less than $455 per week . . . ;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a). Defendant bears the burden of proving this defense at trial. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1156 (11th Cir. 2008). Thus to prevail on summary judgment, plaintiff must prove that, as a matter of law, he does not meet just one prong. The exemption must be narrowly construed, *Nicholson v. World Business Network, Inc.*, 105 F.3d 1361, 1364 (11th Cir. 1997), and should only be applied to employees who are "clearly and unmistakably within the terms and spirit of the exemption," *Brock v. Norman's*

6

*County Market, Inc.*, 835 F.2d 823, 826 (11th Cir. 1988).

Plaintiff concedes that the first prong is met and states that he cannot produce enough evidence supporting summary judgment on the second prong. However, plaintiff argues that the third and fourth prongs do not describe him as a matter of law and that he is entitled to summary judgment on his overtime claim.

### Directs the work of two or more other employees

The third prong of the executive employee test is that the employee "customarily and regularly directs the work of two or more other employees . . . ." 29 C.F.R. § 541.100(a)(3). "Customarily and regularly" includes "work normally and recurrently performed every workweek," does not include "isolated or one-time tasks," and "must be greater than occasional but . . . may be less than constant." 29 C.F.R. § 541.701. The phrase "two or more other employees" means two full-time employees or their equivalent. 29 C.F.R. § 541.104(a). This has been held to be subordinates working a combination of 80 hours or more per week, *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1275 (11th Cir. 2008), although some courts have held that less than 80 hours might be enough if there are unique circumstances of the business operation, *Murray v. Stuckey's, Inc.*, 50 F.3d 564, 569 (8th Cir. 1995). The manager may not be required to be physically present at the restaurant to direct the work of other employees for 80 hours. *See In re Family Dollar FLSA Litigation*, 637 F.3d 508 (4th Cir. 2011) (holding that store managers were not required to be present when hourly employees worked the 80 hours as long as he is considered to be supervising them even in his absence); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104 (9th Cir. 2011).

Plaintiff's position rests on the argument that he could not possibly supervise more hours

than he worked himself. *See* Doc. 19 at 7. The court does not find this argument to be persuasive. Although plaintiff typically only worked with one other employee,[7] there is also evidence that he supervises those working at the mall location in his absence. There is no testimony that a separate manager came in to manage the restaurant in plaintiff's absence. On days when plaintiff was not on duty, he could leave instructions for employees to perform specific tasks, and upon his return, could ensure that the tasks were performed. He had the authority to discipline employees who did not comply with company policy during his days off. Finally, he had to ensure that the employees had the necessary supplies to operate the restaurant when he was not working and that there were enough employees scheduled for each day. The undersigned finds that the hours for employees working at the mall location in plaintiff's absence should be included in the calculation.

Defendant produced sheets which Carlos and Abraham state were used to ensure the employees were being paid for the hours they worked. In analyzing the pay sheets, the undersigned assumes that, unless otherwise marked, a checkmark or other marking next to an employee's name means he or she worked the entire day. *See* Carlos Depo. 19–20 (describing the system). Thus the court assumes a checkmark on a Monday through Saturday means the employee worked a full ten-hour shift–eleven hours that the restaurant was open with two thirty-

---

[7]Defendants admit, through Carlos, Las Fiestas's corporate representative, that plaintiff worked with one employee ninety-five percent of the time, and by himself the other five percent of the time. Carlos Depo. 21–22. Plaintiff occasionally called Carlos for extra assistance.

8

minute breaks[8]–and a checkmark on a Sunday means a four-hour shift.[9] "OFF" means the employee did not work any hours on that particular day. Where the sheet was ambiguous, the court counted the employee as working that day. As a general rule, each week included Abraham, an employee who appeared to be working full-time, and two employees who filled in, especially on days Abraham did not work. The table below delineates the number of store-hours employees other than Abraham worked at the mall:[10]

| Citation | Hours | | Citation | Hours | | Citation | Hours | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Att.1 at 1 | 84 | 84 | Att.1 at 14 | 74 | 74 | Att. 2 at 7 | 118 | 118 |
| Att.1 at 2 | x | x | Att.1 at 15 | 74 | 74 | Att. 2 at 8 | 74 | 74 |
| Att.1 at 3 | 54 | 84 | Att.1 at 16 | 74 | 50 | Att. 2 at 9 | 74 | 69 |
| Att.1 at 4 | 168 | 99 | Att.1 at 17 | 123 | 54 | Att. 2 at 10 | 74 | 74 |
| Att.1 at 5 | 79 | 69 | Att.1 at 18 | 74 | 74 | Att. 2 at 11 | 74 | 64 |
| Att.1 at 6 | 74 | 74 | Att.1 at 19 | 74 | 74 | Att. 2 at 12 | 84 | 64 |
| Att.1 at 7 | 84 | 74 | Att.1 at 20 | 74 | 74 | Att. 2 at 13 | 75 | 112 |
| Att.1 at 8 | 84 | 81 | Att. 2 at 1 | 74 | 74 | Att. 2 at 14 | 78.5 | 77.5 |
| Att.1 at 9 | 84 | 84 | Att. 2 at 2 | 74 | 74 | Att. 2 at 15 | 80 | 74 |
| Att.1 at 10 | 84 | 74 | Att. 2 at 3 | 74 | 82 | Att. 2 at 16 | 74 | 74 |
| Att.1 at 11 | 74 | 74 | Att. 2 at 4 | 74 | 83 | Att. 2 at 17 | 74 | 94 |

[8]There is no testimony regarding whether other employees also received two thirty-minute breaks as plaintiff did. The undersigned assumes this fact for the initial calculation and addresses this discrepancy below.

[9]The sheets are marked beginning with "L" and ending with "D." The court assumes that these initials correspond with the Spanish names for the days of the week, beginning with Monday and proceeding through Sunday.

[10]All citations refer to attachments to Document # 24.

| Att.1 at 12 | 74 | 94 | Att. 2 at 5 | 81.5 | 85 | | |
| Att.1 at 13 | 74 | 74 | Att. 2 at 6 | 91 | 89 | | |

There were seventy-two weeks of sheets included. According to the chart, plaintiff supervised employees for 80 or more store-hours on twenty-five of those weeks, or thirty-five percent of the time. He supervised employees for 74 or more hours on sixty-five of those weeks, or ninety percent of the time.

The undersigned finds that thirty-five percent of the time is not customary or regular for the purposes of this section. *See In re Family Dollar FLSA Litigation*, 637 F.3d 508 (4th Cir. 2011) (employing an eighty-percent threshold); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008) (affirming the district court, but disagreeing with its assertion that seventy-six percent of the time could not be found to be customary or regular). However, there is also evidence that employees, particularly Oscar, the cook, arrived before the start of the shift to prepare for the day. These hours are not included in the court's analyzation of the chart. Furthermore, plaintiff has not provided evidence regarding whether the employees' breaks should be included in the calculations. There is no testimony regarding whether the other employees even received the two thirty-minute breaks that plaintiff did, whether the employees are free to leave the premises during any break, or whether plaintiff is considered to be supervising them while they are on any break.[11] If the court were to include just one employee's break-time per

---

[11]*But see Perez v. RadioShack Corp.*, 386 F. Supp. 2d 979, 987 (N.D. Ill. 2005) ("The court presumes that employees are not supervised during their lunch breaks and that [employees] are free to leave the store premises during such breaks."). Taking the evidence in the light most favorable to defendants, the undersigned is uncomfortable making such a presumption at this time.

day, or an additional six hours per week, plaintiff would supervise employees for 80 hours or more ninety percent of the time,[12] a percentage which easily meets the threshold of being "customar[y] and regular[]." This does not include any potential time an employee spends preparing for the day before their shift or cleaning up after their shift. The undersigned believes a reasonable jury could find that plaintiff customarily and regularly supervises two or more full-time employees or their equivalent.[13]

Generally, each schedule included on the sheets provided includes Abraham, one full-time employee who worked six days of the week, and two other employees who filled in. As discussed above, there is a genuine issue of fact as to whether these subordinate employees combined to work 80 or more hours per week. Taking the evidence in the light most favorable to defendants, a genuine issue of material fact to exists as to this prong.

***Authority to hire and fire***

The fourth prong of the executive employee test is that the employee "has the authority to hire or fire other employees" or has his suggestions or recommendations regarding such given particular weight. 29 C.F.R. § 541.100(a)(4).

In determining whether plaintiff's suggestions and recommendations were given "particular weight," the court considers:

[W]hether it is part of the employee's job duties to make such suggestions and

---

[12]All entries in the chart of seventy-four hours or more would be increased to eighty hours or more.

[13]Taking the hours in the abstract, the mall restaurant was open 70 hours per week and plaintiff argues that he typically worked with one other employee. Therefore the employee hours worked per week would ordinarily total 140 hours. Plaintiff admits that he ordinarily worked 54 hours per week. This leaves 86 hours per week to be worked by other subordinate employees.

recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. It does not include an occasional suggestion with regard to the change in status of a co-worker. An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

29 C.F.R. § 541.105.

Plaintiff had authority to recommend potential employees for hiring to Carlos, although Carlos had the ultimate authority to approve all hiring decisions. Plaintiff made suggestions to Carlos about adding staff to his location, and there is no evidence his suggestion or request for more staff was not typically followed.[14] Although plaintiff could not fire employees from all Las Fiestas restaurants, he did have authority to send them back to other restaurants if he was unhappy with their performance at work. Since the employees who worked at the mall location were the only employees plaintiff could customarily and regularly direct, this action could be construed as firing them from that location. Furthermore, plaintiff allowed employees to leave work early without any input from Carlos. Carlos would consider any evaluations that plaintiff provided concerning the work of the employees under his supervision. Plaintiff did not have any authority to set the pay of the employees at the mall location, and there is no evidence regarding whether there was any opportunity for promotion at the mall location.

The court finds that defendant has created a genuine issue of fact as to whether plaintiff's

---

[14]Carlos asserts that the decision was typically granted but was made based on whether other employees were available. *See* Carlos Depo. 17 ("When he started at the mall, he got all the time more people, more employees."); *id.* at 41 ("Q. If he needed . . . or if he wanted to have three employees, could he do that? A. Yes."); *id.* at 41–42 (stating that an employee would be sent upon request if available).

suggestions and recommendations regarding employees were given particular weight. The fact that Carlos had to approve hires and approve plaintiff's requests for extra employees does not defeat this prong.

### Conclusion

Having considered the foregoing, the undersigned finds that defendant has shown that a genuine issue of material fact exists allowing this issue to proceed to trial.[15] Thus, the undersigned recommends that plaintiff's motion for partial summary judgment (doc. 18) be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2), FED. R. CIV. P., any party may file specific written objections to this report and recommendation within fifteen (15) days from the date it is filed in the office of the Clerk.  Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fifteen (15) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal.  Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

**DONE**, this 6th day of April, 2012.

_____
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE

---

[15]Because the undersigned concludes that defendant has shown that a genuine issue of material fact exists, it is not necessary to determine whether plaintiff is entitled to attorney's fees.