UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| ABRAHAM SANCHEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CASE NO. 3:10-CV-0614-SLB |
| | ) |
| LAS FIESTAS, INC.; CARLOS SANCHEZ, | ) |
| | ) |
| | ) |
| Defendants. | |

### MEMORANDUM OPINION

On April 6, 2012, the Magistrate Judge filed his Report and Recommendation, (doc. 26),[1] recommending plaintiff's Motion for Partial Summary Judgment, (doc. 18), be denied. Plaintiff filed his Objection to Magistrate's Report and Recommendation. (Doc. 27.) Based upon the court's consideration of all the materials in its file, including the Report and Recommendation, the court is of the opinion that plaintiff's Objection is due to be sustained and the Magistrate Judge's Recommendation is due to be rejected in part and adopted in part. Plaintiff's Motion for Partial Summary Judgment will be granted in part and denied in part.

### I. STANDARD OF REVIEW OF THE REPORT AND RECOMMENDATION

The district court reviews de novo those parts of the Report and Recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)("The district judge must determine de novo any part of the magistrate judge's disposition that has been

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

properly objected to."). The court may review the other parts of the Report and Recommendation for plain error or manifest injustice. *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983)(citing *Nettles v. Wainwright*, 677 F.2d 404, 410 (11th Cir. 1982)). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## II.  FACTS

The plaintiff does not dispute the facts set forth in the Report and Recommendation. Therefore, the court adopts the following:

> Defendant Las Fiestas, Inc. ("Las Fiestas") owns and operates several Mexican restaurants in northwest Alabama. In 2004, plaintiff Abraham Sanchez ("Abraham") began working for Las Fiestas as a waiter at the Cloverdale location [in Florence, Alabama]. Abraham Depo. (Doc. 23 Att. 2) 7. In 2006, Las Fiestas opened a restaurant in Regency Square Mall in Florence, Alabama. The restaurant was located in the mall's food court, and provided counter service only. The restaurant operated a total of seventy hours per week; it was open Monday through Saturday from 10:00 am to 9:00 pm, and on Sundays from 1:00 pm to 5:00 pm.
>
> Plaintiff began working at the mall restaurant as a manager in October 2006. Abraham Depo. (Doc. [23] Att. [1]) 8. He and all other managers reported directly to defendant Carlos Sanchez ("Carlos"), the sole owner of Las Fiestas. Carlos Depo. 6. Plaintiff's job duties reportedly included customer relations, supervising the other employees, ensuring that the restaurant employees followed company procedures, and consistently serving quality food to the public. Carlos Aff. (Doc. 23 Att. 1) 2[;] Abraham Depo. 30, 33. He ordered the food and other supplies for the restaurant and handled maintenance issues. Carlos Depo. 23-24; Abraham Depo. 16–17, 27. Plaintiff determined when employees could take breaks, determined whether additional employees were needed, and disciplined employees for poor work. Carlos Aff.; Abraham Depo. 29; Carlos Depo. 40–41. When employees or customers

complained, the complaints were received by plaintiff. Abraham Depo. 30, 32–33.

Plaintiff shared hiring duties with Carlos. Carlos Aff.; Carlos Depo. 22–23. However, Carlos had to approve all hires at the mall location and he was responsible for setting the pay of all employees. Carlos Depo. 23. Employees were rarely fired from the Las Fiestas chain of restaurants, but plaintiff had the authority to send employees back to another restaurant if he was unhappy with their performance. *Id*. at 24 ("We send somebody from another restaurant, somebody extra. Sometimes he send them back because not working good. We never say no more job."). For example, if plaintiff needed extra help for the mall restaurant, he would call Carlos, who would send an extra employee to the mall location. *Id*. Plaintiff could then dismiss the extra employees back to the restaurant where they normally worked. Carlos visited the mall restaurant on average only twice a month. Carlos Aff.

Plaintiff typically worked from 10:00 am to 9:00 pm five days a week, with two 30-minute breaks throughout the day. Additionally, plaintiff would work four hours every Sunday. Abraham Depo. 21-22; Carlos Depo. 34-37. Plaintiff arrived at the mall about fifteen-minutes early to open the restaurant and might stay ten minutes after it closed to clean up and prepare for the next day. Carlos Depo. 36-37; Abraham Depo. 19-20. Plaintiff received a bi-weekly salary of $600 via check and between $500 to $600 in cash. Doc. 19 at 2; Abraham Depo. 9-12; Carlos Depo. 12. If he missed time at the mall, his pay would be reduced accordingly. Carlos Depo. 16. On days when plaintiff was not on duty, he could leave instructions for employees to perform specific tasks, and upon his return, could ensure that the tasks were performed. Carlos Aff. He had the authority to discipline employees who did not comply with company policy during his days off. *Id*. Finally, he had to ensure that the employees had the necessary supplies to operate the restaurant when he was not working and that there were enough employees scheduled for each day. *Id*.

Plaintiff typically worked with one other employee, Carlos Depo. 21-22, although as discussed above he sometimes called Carlos for extra employees. [Defendants have] provided sheets on which plaintiff wrote down who worked at the mall location each week. Abraham Depo. 17-18, 31-32; see Doc. 24 Atts. 1, 2. The sheets were not necessarily a schedule, but were kept to help ensure that the other employees were being paid for their hours. Abraham Depo. 30-32. Plaintiff states that a man named "Jorge" worked at

>   the mall but did not work with plaintiff.  *Id*. at 17.  Plaintiff also worked with two men named "Oscar" and "Josef Fidel."  *Id*. at 12, 17-18.  Oscar typically arrived to work earlier than Abraham, since he was the cook and needed to prepare the food.  *Id*. at 20, 27.  When Oscar had a day off, he would prepare the food the previous day, and another employee would come in to serve the food to the customers.  *Id*. at 27.  Other employees from the mall location are listed on the sheets written out by plaintiff.  *See* Doc. 24 Atts. 1, 2.  For the most part, the sheets do not list how many hours each employee worked, but rather just whether they worked on any particular day.  . . .
>
>   Plaintiff stopped managing the mall restaurant in June or July 2009. Abraham Depo. 34; Carlos Depo. 25.  He returned to working as a waiter at the Las Fiestas restaurant in Cloverdale and remains employed in that capacity. On March 23, 2010, plaintiff filed this lawsuit, seeking overtime pay pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.

(Doc. 26 at 1-5 [footnotes omitted].)

The record contains a number of documents, which the Magistrate Judge called "pay sheets," (*id*. at 8), that show the days worked at the restaurant by plaintiff and other employees, (doc. 24; doc. 24-1; doc. 24-2).  Plaintiff prepared the pay sheets every week. (Doc. 23-2 at 13, 18.)  Defendant Carlos Sanchez testified that the pay sheets were "fair and accurate representation[s] of the days that workers worked and did not work," and that they showed the typical staffing levels of the restaurant.  (Doc. 19-1 at 20-21.)

The pay sheets are charts with the days of the week across the top and the employees' names down the side.  (Doc. 24-1; doc. 24-2.)  Plaintiff prepared these documents for purposes of paying the employees.  (Doc. 23-2 at 13.)  For each day – Monday through Sunday – plaintiff has written "off" or entered a checkmark for each employee.  (*See* doc. 24-1 at 1.)  The Magistrate Judge assumed that a check meant that "the employee worked a full

4

ten-hour shift – eleven hours that the restaurant was open with two thirty-minute breaks – and a checkmark on a Sunday meant a four-hour shift." (Doc. 26 at 8-9 [footnotes omitted].) Based on his analysis of the pay sheets, the Magistrate Judge found:

> There were seventy-two weeks of sheets included. . . . [P]laintiff supervised employees for 80 or more store-hours on twenty-five of those weeks, or thirty-five percent of the time. He supervised employees for 74 or more hours on sixty-five of those weeks, or ninety percent of the time.
>
> The undersigned finds that thirty-five percent of the time is not customary or regular for the purposes of this section. *See In re Family Dollar FLSA Litigation*, 637 F.3d 508 (4th Cir. 2011)(employing an eighty-percent threshold); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008)(affirming the district court, but disagreeing with its assertion that seventy-six percent of the time could not be found to be customary or regular). However, there is also evidence that employees, particularly Oscar, the cook, arrived before the start of the shift to prepare for the day. These hours are not included in the court's [analysis] of the chart. Furthermore, plaintiff has not provided evidence regarding whether the employees' breaks should be included in the calculations. There is no testimony regarding whether the other employees even received the two thirty-minute breaks that plaintiff did, whether the employees are free to leave the premises during any break, or whether plaintiff is considered to be supervising them while they are on any break. If the court were to include just one employee's break-time per day, or an additional six hours per week, plaintiff would supervise employees for 80 hours or more [than] ninety percent of the time, a percentage which easily meets the threshold of being "customar[y] and regular[]." This does not include any potential time an employee spends preparing for the day before their shift or cleaning up after their shift. The undersigned believes a reasonable jury could find that plaintiff customarily and regularly supervises two or more full-time employees or their equivalent.
>
> Generally, each schedule included on the sheets provided includes Abraham, one full-time employee who worked six days of the week, and two other employees who filled in. As discussed above, there is a genuine issue of fact as to whether these subordinate employees combined to work 80 or more hours per week. Taking the evidence in the light most favorable to defendants, a genuine issue of material fact to exists as to this prong.

5

(*Id*. at 10-11 [footnotes omitted].)

The Magistrate Judge found a disputed issue of fact with regard to whether plaintiff supervised two full-time employees or the equivalent, including whether he supervised employees when he was not physically present at the restaurant.

The Report and Recommendation also states:

> Plaintiff had authority to recommend potential employees for hiring to Carlos, although Carlos had the ultimate authority to approve all hiring decisions. Plaintiff made suggestions to Carlos about adding staff to his location, and there is no evidence his suggestion or request for more staff was not typically followed. Although plaintiff could not fire employees from all Las Fiestas restaurants, he did have authority to send them back to other restaurants if he was unhappy with their performance at work. Since the employees who worked at the mall location were the only employees plaintiff could customarily and regularly direct, this action could be construed as firing them from that location. Furthermore, plaintiff allowed employees to leave work early without any input from Carlos. Carlos would consider any evaluations that plaintiff provided concerning the work of the employees under his supervision. Plaintiff did not have any authority to set the pay of the employees at the mall location, and there is no evidence regarding whether there was any opportunity for promotion at the mall location.

(*Id*. at 12.) Based on this evidence the Magistrate Judge determined that an issue of fact existed as to whether plaintiff's suggestions were given particular weight with regard to hiring and firing decisions. Plaintiff does not object to this finding. (*See generally* doc. 27.)

The Magistrate Judge found that plaintiff had not proven, as a matter of law, that defendants could not establish an executive exemption, and, therefore, he recommended denying plaintiff's Motion for Partial Summary Judgment.

### III. DISCUSSION

Plaintiff objects to the finding that substantial evidence demonstrated by the pay sheets creates a question of fact as to whether he supervised two full-time employees or the equivalent. He contends, "There is no evidence in the record that supports [defendants'] assertion that the plaintiff supervised two or more full-time employees. In fact, [Carlos Sanchez] testified that the plaintiff supervised one employee 95% of the time." (Doc. 27 at 4.) Plaintiff takes issue with the fact that defendants did not produce records of the actual hours worked by his subordinate employees. (*See id*. at 3-4.) Nevertheless, the court finds that the pay sheets produced by defendants, which defendant Carlos Sanchez testified were accurate, show that plaintiff did ***not*** "customarily and regularly direct[ ] the work of two or more employees." *See* 29 C.F. R. § 541.100(a).

> The FLSA provides that employees are generally entitled to receive overtime pay at one and one-half times their regular rate for all hours worked in excess of forty per week. *See* 29 U.S.C. § 207(a)(1). The FLSA exempts from its overtime pay requirements "any employee employed in a bona fide executive, administrative, or professional capacity." *See* 29 U.S.C. § 213(a)(1); *see also Avery v. City of Talladega*, 24 F.3d 1337, 1340 (11th Cir. 1994). The employer has the burden of showing entitlement to an exemption, *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995), and [the Eleventh Circuit] construe[s] overtime exemptions narrowly, against the employer. *Avery*, 24 F.3d at 1340 (citing *Brennan v. Sugar Cane Growers Co-Op*, 486 F.2d 1006 (5th Cir. 1973)). [The Eleventh Circuit] has recognized the "Supreme Court's admonition that courts closely circumscribe the FLSA's exceptions." *Nicholson v. World Bus. Network, Inc.*, 105 F.3d 1361, 1364 (11th Cir. 1997). The executive exemption "is to be applied only to those clearly and unmistakably within the terms and spirit of the exemption." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1269 (11th Cir. 2008).

*Barreto v. Davie Marketplace, LLC*, 331 Fed. Appx. 672, 673-74 (11th Cir. 2009).[2] Section 541.100(a) of the Code of Federal Regulations provides:

> The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:
>
> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a). For plaintiff to be exempt from overtime pay based on the executive exemption, defendants must prove plaintiff satisfies "*all*" of the "*definitive criteria*" of 29 C.F. R. § 541.100(a)(1)-(4). *See Wirtz v. C & P Shoe Corp.*, 336 F.2d 21, 27-28 (5th Cir. 1964), *cited in Feldman v. Cutting*, No. 09-14133-CIV, 2009 WL 4021364, 3 (S.D. Fla. Nov. 19, 2009).

---

[2]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***." 11th Cir. R. 36-2 (emphasis added).

Plaintiff moved for Partial Summary Judgment, arguing that "because he did not regularly supervise two or more employees and because he had no real managerial authority," defendants cannot prove plaintiff was an executive employee exempt from the overtime pay requirements of the FLSA. (Doc. 19 at 1-2, 10.)  Plaintiff only objects to the Magistrate Judge's finding that he "may have directed the work of two or more employees."  (Doc. 27 at 2.)

In order to prove plaintiff is exempt from the overtime laws because he is employed in a bona fide executive capacity, the defendants must prove plaintiff "has the authority to hire or fire other employees or [his] suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4).  The Magistrate Judge found the defendants had "created a genuine issue of fact as to whether plaintiff's suggestions and recommendations regarding employees were given particular weight."  Plaintiff did not object to this finding.  After reviewing the record, the court finds that this determination is not clearly erroneous.  Therefore, the court will adopt the Magistrate Judge's Recommendation that plaintiff's Motion for Partial Summary Judgment be denied as to this issue.

In order to prove plaintiff is exempt from overtime pay as a bona fide executive employee, defendants must also prove that plaintiff "customarily and regularly directs the work of two or more other employees." 29 C.F. R. § 541.100(a)(3).  The term "two or more

other employees" is defined as two full-time employees or their equivalent. One full-time and two half-time employees, for example, are equivalent to two full-time employees. Four half-time employees are also equivalent." 29 C.F.R. § 541.104(a).

Citing *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1275 (11th Cir. 2008), the Magistrate Judge noted that the equivalent of two full-time employees "has been held to be subordinates working a combination of 80 hours or more per week." (Doc. 26 at 7 [citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1275 (11th Cir. 2008)].) In *Morgan*, the Eleventh Circuit stated, "Although the preamble to the new regulations states that the [Department of Labor] declines to clarify the meaning of 'full-time,' it 'stands by its current interpretation that an exempt supervisor generally must direct a total of 80 employee-hours of work each week.'" *Morgan*, 551 F.3d at 1275 (citing Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122, 22,135 (Apr. 23, 2004)). In a footnote, the court cited to the Department of Labor Wage and Hour Division's Field Operations Handbook, stating that "[t]wo full-time employees or the equivalent within the meaning of Reg. 541.105(a) is generally considered to mean 80 hours of work by subordinate employees." *Id*. n. 65 (citing Field Operations Handbook, § 22c00(b)).[3] The *Morgan* court also noted that the "Field

---

[3]In the current version of the Field Operations Handbook, § 22c00 is the "Criteria for exemption of 'administrative' employees. Field Operations Handbook § 22c00, found at http://www.dol.gov/whd/FOH/FOH_Ch22.pdf. Section 22b02(b) defines two or more employees. *Id*. § 22b02(b).

10

Operations Handbook is persuasive, even though it is not entitled to *Chevron* deference." *Id*. (citing *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1255 (11th Cir. 2001)).

Section 22b02(b) of the Field Operations Handbook provides:

> "Two or more other employees" means two full-time employees or the equivalent (29 CFR § 541.104). For example, one full-time and two half-time employees are equivalent to two full-time employees. Four half-time employees are also equivalent to two full-time employees. Full-time generally means someone who works 40 or more hours per week. If occasional, temporary or part-time employees are involved when determining if the two full-time employee equivalency is met, an exempt executive must supervise two or more employees for a combined total of 80 hours of work by such employees. In other words, the total number of hours worked by subordinate employees supervised must ordinarily total 80 within the workweek to qualify as the equivalent of two full-time employees. ***If a full-time employee works over 40 hours in the workweek, he or she counts as the equivalent of only one employee. For example, if a full-time employee works 60 hours per week and a part-time employee works 20 hours per week, although the two employees together work a total of 80 hours, an equivalent of only one full-time and one part-time employee is supervised, thereby not meeting the criteria.*** Only other employees of the employer may be considered when determining if the two full-time employee equivalency is met; supervision of volunteers, employees of independent contractors, or any other "non-employees" (trainees, interns) in relation to the employer are not considered for purposes of this test.

Field Operations Handbook § 22b02(b) (emphasis added), found at http://www.dol.gov/whd/FOH/FOH_Ch22.pdf.

The Magistrate Judge counted the total hours worked by plaintiff's subordinate employees as reflected on the pay sheets. The pay sheets show that one employee regularly

11

worked over forty hours per week. The hours over 40 per week worked by the regular full-time employee should not have been added to the hours worked by the part-time employees. For example, assuming – as the Magistrate Judge did[4] – that a shift on Monday through Saturday was 10 hours and a shift on Sunday was four hours, typically one subordinate employee worked 54 hours per week and either 2 employees worked 20 hours or three employees worked 30 hours. According to the Field Operations Handbook, the total hours of the full-time employee and the part-time employees are not added together. Rather, all the hours worked by the full-time employee are counted as one full-time employee, and the hours worked by the part-time employees are added together to determine if they equal the hours of a full-time employee, which is a combined 40 hours or more. *See* Field Operations Handbook § 22b02(b).

     Of the 72 weeks covered by the pay sheets, 2 employees worked more than 40 hours each, the equivalent of 2 full-time employees, 3 times. (*See* doc. 24-1 at 4, 17; doc. 24-2 at 13.) For 5 weeks, plaintiff supervised the equivalent of 2 full-time employees – 1 employee worked 40 hours or more and two or more part-time employees worked 40 hours or more, the equivalent of a full-time employee. (*See* doc. 24-1 at 4, 8; doc. 24-2 at 7.) Thus, plaintiff supervised 2 or more full-time employees, or the equivalent of 2 full-time employees, for 7 out of 72 weeks, or 9.7% of the time.

---

[4](*See* doc. 26 at 8-9.)

As to the remaining weeks represented by the pay sheets, for 5 weeks, no single employee worked over 40 hours and the total of the hours worked by all part-time employees was less than 80. (*See* doc. 24-1 at 3, 7, 10, 16; doc. 24-2 at 17.) For 60 weeks, plaintiff supervised 1 full-time employee and 1 or more part-time employees working less than 40 hours, (*see* doc. 24-1 at 1, 3, 5-20; doc. 24-2 at 1-6, 8-9, 12-17). Therefore, approximately 90% of the time, plaintiff did not supervise two or more employees.[5]

The court finds that the Magistrate Judge erred in counting the total hours worked by the full-time employee instead of counting him as one full-time employee. When the full-time employee is properly counted, the evidence shows that plaintiff did not "customarily and regularly direct the work of two or more other employees."

Because defendants cannot prove that plaintiff meets each and every requirement for the executive exemption, plaintiff's Motion for Partial Summary Judgment is due to be granted. *See Wirtz*, 336 F.2d at 27-28.

Plaintiff also moved for summary judgment on his claim for attorney's fees.[6] Recently, the Eleventh Circuit held –

---

[5] This result is not significantly different if the court assumes that employees worked eleven hours without a break on the Monday-Saturday shifts. Using this assumption, plaintiff supervised two or more full-time employees, or the equivalent of two full-time employees 10 weeks out of the 72 weeks, which is almost 14%.

[6] The Magistrate Judge made no finding as to plaintiff's claim for attorney's fees in his Motion for Partial Summary Judgment because he had found a genuine issue of material of fact as to defendants' claimed executive exemption. (Doc. 26 at 13 n.15.)

>Congress has provided that the court in an FLSA action "shall, *in addition to any judgment awarded to the plaintiff or plaintiffs*, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b)(emphasis added). The FLSA plainly requires that the plaintiff receive a judgment in his favor to be entitled to attorney's fees and costs."

*Dionne v. Floormasters Enterprises, Inc.*, 667 F.3d 1199, 1205 (11th Cir. 2012). Plaintiff's Motion for Partial Summary Judgment as to his attorney's fees is premature and will be denied without prejudice to plaintiff to seek an award of attorney's fees as part of a judgment in his favor if any.

### CONCLUSION

Based on the foregoing, plaintiff's Objection to the Magistrate Judge's Report and Recommendation, (doc. 27), will be sustained. For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and plaintiff is entitled to judgment as a matter of law as to defendants' affirmative defense based on the executive exemption. An Order rejecting the Magistrate Judge's Recommendation and granting plaintiff's Motion for Partial Summary Judgment,(doc. 18), as to the executive exemption and denying the Motion as to plaintiff's claim for attorney's fees will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 31st day of August, 2012.

/s/ Sharon Lovelace Blackburn
_____
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE